**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AFFILIATED HEALTH GROUP, LTD.,
AMERICAN HEALTH CENTER, LTD.,
DIMENSIONS MEDICAL CENTER, LTD.,
ACCESS HEALTH CENTER, LTD.,
ACU HEALTH CENTER, LTD.,
ADVANTAGE HEALTH CARE, LTD.,
AANCHOR HEALTH CENTER, LTD.
FORESTVIEW MEDICAL CENTER, LTD.,
MICHIGAN AVENUE CENTER FOR HEALTH, LTD.,
ACE HEALTH CENTER, LTD.,
CENTER FOR FAMILY HEALTH CARE, SC,
VIJAY L. GOYAL, MD and
VINOD K. GOYAL, MD,

*Plaintiffs,*

v.

CITIBANK CORPORATION,
BANK OF AMERICA CORPORATION, and
THE PNC FINANCIAL SERVICES GROUP, INC.

*Defendants*.

Hon. Judge ________________

Case no. 15-L-_____________

**COMPLAINT AND JURY DEMAND**

NOW COME the Plaintiffs, by and through their attorneys, the Law Offices of Jaime T. Zeas, Esq., pleading hypothetically and in the alternative and state as follows:

**<u>INDEX OF COUNTS</u>**

I. Affiliated Health Group, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

II. Affiliated Health Group, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

III. American Health Center, Ltd. - Citibank Corporation-Violation of Section 3-420 of the Uniform Commercial Code.

IV.     American Health Center, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

V.      Dimensions Medical Center, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

VI.     Dimensions Medical Center, Ltd. – Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

VII.    Access Health Center, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

VIII.   Access Health Center, Ltd. – Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

IX.     ACU Health Center, Ltd. – Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

X.      ACU Health Center, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XI.     Advantage Health care, Ltd. – Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XII.    Advantage Health care, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XIII.   AAnchor Health Center, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XIV.    AAnchor Health Center, Ltd. – Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XV.     Forestview Medical Center, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XVI.    Forestview Medical Center, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XVII.   Michigan Avenue Center for Health, Ltd .- Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XVIII.  Michigan Avenue Center for Health, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XIX.    Ace Health Center, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XX.     Ace Health Center, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXI.    Center for Family Health Care, Ltd. - Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXII.    Center for Family Health Care, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXIII.    Vijay L. Goyal, MD- Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXIV.    Vijay L. Goyal, MD- Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXV.    Vinod K. Goyal, MD- Citibank Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXVI.    Vinod K. Goyal, MD- Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXVII.    Affiliated Health Group, Ltd. – Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXVIII.    Affiliated Health Group, Ltd. – Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXIX.    American Health Center, Ltd. – Bank of America Corporation-Violation of Section 3-420 of the Uniform Commercial Code.

XXX.    American Health Center, Ltd. – Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXXI.    Dimensions Medical Center, Ltd. - Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXXII.    Dimensions Medical Center, Ltd. – Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXXIII.    Access Health Center, Ltd. - Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXXIV.    Access Health Center, Ltd. – Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXXV.    ACU Health Center, Ltd. – Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXXVI.    ACU Health Center, Ltd. - Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXXVII.    Advantage Health care, Ltd. – Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XXXVIII. Advantage Health care, Ltd. - Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XXXIX. AAnchor Health Center, Ltd. - Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XL. AAnchor Health Center, Ltd. – Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XLI. Forestview Medical Center, Ltd. - Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XLII. Forestview Medical Center, Ltd. - Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XLIII. Michigan Avenue Center for Health, Ltd .- Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XLIV. Michigan Avenue Center for Health, Ltd. - Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XLV. Ace Health Center, Ltd. - Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XLVI. Ace Health Center, Ltd. - Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XLVII. Center for Family Health Care, Ltd. - Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

XLVIII. Center for Family Health Care, Ltd. - Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

XLIX. Vijay L. Goyal, MD- Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

L. Vijay L. Goyal, MD- Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

LI. Vinod K. Goyal, MD- Bank of America Corporation- Violation of Section 3-420 of the Uniform Commercial Code

LII. Vinod K. Goyal, MD- Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards

LIII. Affiliated Health Group, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LIV. Affiliated Health Group, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LV.      American Health Center, Ltd. - The PNC Financial Services Group, Inc.-Violation of Section 3-420 of the Uniform Commercial Code.

LVI.     American Health Center, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LVII.    Dimensions Medical Center, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LVIII.   Dimensions Medical Center, Ltd. – The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LIX.     Access Health Center, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LX.      Access Health Center, Ltd. – The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXI.     ACU Health Center, Ltd. – The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXII.    ACU Health Center, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXIII.   Advantage Health care, Ltd. – The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXIV.    Advantage Health care, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXV.     AAnchor Health Center, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXVI.    AAnchor Health Center, Ltd. – The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXVII.   Forestview Medical Center, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXVIII.  Forestview Medical Center, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXIX.    Michigan Avenue Center for Health, Ltd .- The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXX.     Michigan Avenue Center for Health, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXXI.    Ace Health Center, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXXII.   Ace Health Center, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXXIII.  Center for Family Health Care, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXXIV.  Center for Family Health Care, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXXV.   Vijay L. Goyal, MD- The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXXVI.  Vijay L. Goyal, MD- The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

LXXVII. Vinod K. Goyal, MD- The PNC Financial Services Group, Inc.- Violation of Section 3-420 of the Uniform Commercial Code

LXXVIII.   Vinod K. Goyal, MD- The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards

## PRELIMINARY STATEMENT

This is an action for damages arising from negligence and statutory violations by various banking corporations in their handling and negotiation of hundreds if not thousands of improperly indorsed checks made payable to the various plaintiffs.  The improper indorsements found on the back of the checks did not match the payees on the front of the checks – the improper indorsements were obvious.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because plaintiffs are either incorporated in or residents of Illinois and no defendant banking corporation is incorporated in Illinois for diversity purposes, and because plaintiffs' damages exceed $75,000.

This Court has personal jurisdiction over defendants because plaintiffs' claims arise from defendants:

a.      transacting business in the State of Illinois.

This Court has personal jurisdiction over defendants because they are authorized to do business, and are doing business, in the State of Illinois.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) in that all the defendants reside in this District, as that term is defined in § 1391(c) and pursuant to § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL COUNTS

### *A. The Parties and Federal Jurisdiction*

1. At all relevant times, Vijay L. Goyal, MD, and Vinod K. Goyal, MD, owned and operated a for-profit healthcare business entitled Affiliated Health Group, Ltd.

2. At all relevant times, Vijay L. Goyal, MD and Vinod K. Goyal, MD owned and operated eleven (11) healthcare centers for profit including **Affiliated Health Group, Ltd.**, **American Health Center, Ltd.**, Dimensions Medical Center, Ltd., Access Health Center, Ltd., ACU Health Center, Ltd., AAnchor Health Center, Ltd., Forestview Medical Center, Ltd., Michigan Avenue Center for Health, Ltd., Ace Health Center Ltd., Center for Family Health Care, SC and Advantage Health Care, Ltd.

3. At all relevant times, Affiliated Health Group, Ltd. was located in Arlington Heights, Cook County, Illinois and was in the business of providing health and medical care to patients.

4. On and after 1989, Citibank Corporation was a licensed banking corporation operating in the State of Delaware.

5. On and after 1998, Bank of American Corporation was a licensed banking corporation in the State of Delaware.

6. On and after 1983, The PNC Financial Services Group, Inc. was a licensed banking corporation operating in the State of Pennsylvania.

7. The amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different States.

8. From approximately 1992 to 2013, Irina Nakhshin and Inna Koganshats were employees and/or agents of Affiliated Health Group, Ltd. and/or its related companies. Prior to 2013, Irina Nakhshin and Inna Koganshats opened and operated at least four illegitimate limited liability corporations in Illinois similarly named to plaintiffs' legitimate healthcare centers, specifically, "Affiliated Health Group **Billing Inc.**", "American Health Center for **Billing Inc.**", "Dimensions Medical **Management Corp.**", and "American **Center for Management, Inc.**"

9. Prior to 2013, the Northern Trust Corporation ("Northern Trust"), Chase Bank, Citibank Corporation ("Citibank"), Bank of America Corporation ("Bank of America"), The PNC Financial Services Group, Inc. ("PNC Bank"), Fifth Third Bank all were either drawer banks of various drawer health care insurance companies drawing checks to compensate plaintiffs for their healthcare center services and/or these banks received the health insurance money intended for plaintiffs into accounts owned or controlled by Irina Nakhshin or her affiliates.

***B. The Theft of Millions of Dollars from the Plaintiffs by Irina Nakhshin and Inna Koganshats***

10. On and after 1992, the job duties and responsibilities of Irina Nakhshin for the plaintiffs included "posting" or documenting medical insurance payments into the computer software program at the plaintiffs' offices.

11. On and after 1992, Irina Nakhshin stole from the plaintiffs' mail multiple health insurance payments from insurance carriers made payable to "Affiliated Health Group, Ltd.", "American Health Center, Ltd." and "Dimensions Medical Center, Ltd." for medical treatment rendered to patients.

12. On and after 1992; Irina Nakhshin then deposited the checks made payable to "Affiliated Health Group, Ltd.", "American Health Center, Ltd.", "Dimensions Medical Center, Ltd." and/or the other plaintiffs into Nakhshin's accounts at Devon Bank and TCF Bank held in the improper names of "Affiliated Health Group **Billing, Inc.**" and "American Health Center **for Billing, Inc.**"

13. On and after 1992, Irina Nakhshin had no authority or permission as employee or agent of the plaintiffs to open any account at Devon Bank or TCF Bank for the benefit of plaintiffs.

14. On and after 1992, Irina Nakhshin had no authority or permission from the plaintiffs to deposit any checks into any account at Devon Bank.

15. On and after 1992, Irina Nakhshin had no authority or permission from the plaintiffs to deposit any checks into any account at TCF Bank.

16.     On and after 1992, Devon Bank and TCF Bank presented the incorrectly endorsed health insurance check payments to the various drawer banks at Northern Trust, Chase Bank, Citibank, Bank of America, PNC Bank, Fifth Third Bank and TCF Bank for payment.

17.     On and after 1992, the various drawer banks had a duty to verify that the indorsement on each and every health insurance check drawn by its client insurers for the benefit of the plaintiffs was legitimate before forwarding the funds to Devon Bank and TCF Bank.

18.     On and after 1992, the various drawer banks failed to detect the fraudulent and improper indorsements on hundreds if not thousands of checks over the course of twenty (20) years presented to them by Devon Bank and TCF Bank and, therefore, the drawer banks accepted and negotiated the checks forwarding or crediting millions of dollars to the illegitimate accounts of Irina Nakhshin and her affiliates held at Devon Bank and TCF Bank.

19.     On and after 1992, Irina Nakhshin and her various affiliates then transferred the money from the accounts at Devon Bank and TCF Bank into their personal accounts at Northern Trust, Chase Bank, Bank of America, Citibank, PNC Bank, Fifth Third Bank and TCF Bank.

20.     On and after 1992, Irina Nakhshin and her various affiliates then transferred the money from the accounts at TCF Bank into their personal accounts at Northern Trust, Chase Bank, Bank of America, Citibank, PNC Bank, Fifth Third Bank and TCF Bank.

21.     On and after 1992, the money which Irina Nakhshin deposited into the accounts at Devon Bank and TCF Bank was used for her personal gain and the personal gain of her affiliates.

22.     On and after 1992, the money which Irina Nakhshin deposited into the accounts at TCF Bank was used for her personal gain and the personal gain of her affiliates.

23.     On and after 1992, the various drawer health insurance companies received hundreds if not thousands of cancelled checks containing improper indorsements, not containing the correct names of the various legitimate plaintiff payees.

24.     On and after 1992, the various drawer health insurance companies failed to detect the fraudulent and improper indorsements on hundreds if not thousands of checks over the course of twenty (20) years, therefore, permitted their drawer banks to continually accept and negotiate the checks forwarding or crediting millions of dollars to the illegitimate accounts of Irina Nakhshin and her affiliates held at Devon Bank and TCF Bank.

25.     On and after 1992, the various drawer health insurance companies' monetary obligations to the various plaintiff payees were not extinguished by the theft and embezzlement of

their stolen negotiable instruments.

### *C. Violation of Reasonable Commercial Banking Standards for 20 Years*

26. At no time did Affiliated Health Group, Ltd., American Health Center, Ltd., Dimensions Medical Center, Ltd. or any of the other plaintiffs hold any account at Devon Bank or TCF Bank.

27. At all relevant times, reasonable commercial banking standards required that banks not accept, negotiate or deposit checks which were not properly indorsed by the payee.

28. At all relevant times, Citibank, Bank of America and PNC Bank were prohibited by reasonable commercial banking standards from accepting, negotiating or depositing checks into an account which were not indorsed by the proper payee.

29. From 1992 until 2013, Citibank, Bank of America and PNC Bank's employees routinely accepted and negotiated multiple checks made payable to the plaintiff's company namely "Affiliated Health Group, Ltd.", "American Health Center, Ltd.", "Dimensions Medical Center, Ltd." or any other plaintiffs with the Devon Bank and TCF Bank accounts owned and/or controlled by Irina Nakhshin which were not indorsed by the plaintiffs.

30. From 1992 until 2013, Citibank, Bank of America and PNC Bank violated reasonable commercial banking standards by accepting and negotiating checks with Devon Bank and TCF Bank made payable to "Affiliated Health Group, Ltd.," "American Health Center, Ltd.," "Dimensions Medical Center, Ltd." or any other plaintiffs which were not endorsed in the name of the payee. The amounts of these checks which Devon Bank improperly deposited, the drawer banks accepted and negotiated and the various health insurance carriers continually permitted to be accepted and negotiated by their drawer banks on their behalf **exceeded many millions of dollars according to forensic accountant analyses.**

| Company | Insurance Co. | Drawee/Bank | Date | Check # | Amount |
|---|---|---|---|---|---|
| AFF | United Health Care | * | 1/30/12 | PH83221966 | $744.91 |
| AFF | United Health Care | * | 1/30/12 | PG34439271 | $907.50 |
| AFF | United Health Care | * | 2/6/12 | PH62975329 | $2,770.90 |
| AFF | United Health Care | * | 2/27/12 | PH83415025 | $230.32 |
| AFF | United Health Care | * | 2/27/12 | QC53189428 | $1,186.16 |
| AFF | United Health Care | * | 2/27/12 | PH63107179 | _ $922.50 |
| AFF | United Health Care | * | 3/5/12 | PG03071413 | $371.58 |
| AFF | United Health Care | * | 3/19/12 | PH63240553 | $1,086.63 |
| AFF | United Health Care | * | 4/2/12 | PH83672420 | $1,089.00 |
| AFF | United Health Care | * | 4/2/12 | PG35144531 | $4,269.60 |

| | | | | | |
|---|---|---|---|---|---|
| AFF | United Health Care | * | 5/24/12 | PH84046639 | $1,089.00 |
| AFF | United Health Care | * | 5/21/12 | PH84021131 | $1,089.00 |
| AFF | United Health Care | * | 6/25/1.2 | PH84267525 | $4,1 2.00 |
| AFF | United Health Care | * | 7/30/12 | PH84516020 | $714.60 |
| AFF | United Health Care | * | 5/22/13 | PH68965642 | $976 .89 |
| AFF | United Health Care | * | 6/10/13 | PH86644527 | $2,338.40 |
| AFF | United Health Care | Bank of America | 11/12/12 | PG05278377 | $1,614.00 |
| AFF | United Health Care | Bank of America | 11/12/12 | QC04879989 | $1,267.35 |
| AFF | United Health Care | Bank of America | 11/12/12 | L01S234479 | $1,045.85 |
| AFF | United Health Care | Chase | 11/12/12 | PH85259242 | $755 .40 |
| AFF | United Health Care | Chase | 7/2/12 | PH84320061 | $1,612.50 |
| AFF | United Health Care | Chase | 7/2/12 | PH84326288 | $2,584.04 |
| AFF | United Health Care | Chase | 6/18/12 | PH63837413 | $1,202.25 |
| AFF | United Health Care | Bank of America | 4/16/12 | PG03416710 | $157.50 |
| AFF | United Health Care | Chase | 4/16/12 | PH83773580 | $607 .50 |
| AFF | United Health Care | Chase | 4/16/12 | QL41755465 | $1,231.93 |
| AFF | United Health Care | Bank of America | 3/12/12 | PG34912154 | $189.00 |
| AFF | United Health Care | Chase | 3/5/12 | J815056131 | $1,089 .00 |
| AFF | United Health Care | Bank of America | 3/5/12 | PG34834509 | $1,094.00 |
| AFF | United Health Care | Bank of America | 1/23/12 | QC52974969 | $685.13 |
| AFF | United Health Care | Chase | 1/23/12 | PH83173473 | $2,264.44 |
| AFF | United Health Care | Chase | 1/30/12 | PH90131133 | $1,089.00 |
| AFF | United Health Care | Bank of America | 2/13/12 | QC53101164 | $161.70 |
| AFF | United Health Care | Bank of America | 2/13/12 | PG02942323 | $249.00 |
| AFF | United Health Care | Chase | 2/13/12 | PH83318337 | $221.83 |
| AFF | United Health Care | Chase | 2/20/12 | PH83363364 | $2,928.58 |
| AFF | United Health Care | Bank of America | 2/20/12 | L015150773 | $1,179.76 |
| AFF | United Health Care | Chase | 3/5/12 | PH34735573 | $755.97 |
| AFF | United Health Care | Bank of America | 3/5/12 | PG34841982 | $327.42 |
| AFF | United Health Care | Bank of America | 2/18/13 | QC05508758 | $801.34 |
| AFF | United Health Care | Chase | 4/1/13 | PH65653963 | $1,172.25 |
| AFF | United Health Care | Chase | 1/23/12 | PH62886319 | $1,089.00 |
| AFF | United Health Care | Chase | 1/28/13 | PH65299724 | $992.25 |
| AFF | United Health Care | Bank of America | 1/28/13 | L015258600 | $1,609.00 |
| | 61Aite9 l=lealtl:l GaFe | BaAk ef AFfleFisa | 41221 d | QGQ8898Q4 4 | $ ,849.99 |
| AFF | United Health Care | Bank of America | 6/10/13 | PG39567640 | $990.00 |
| ~~AFF~~ | ~~United Health Care~~ | ~~Chase~~ | 5/22/13 | ~~PH86521589~~ | ~~$866.10~~ |

| | | | | | |
|---|---|---|---|---|---|
| | 61Aite9 l=lealtf::i GaFe | BaAk ef AFfleFisa | 0,1 g,1a | QG8eQ24 4 8e | $489.Q |
| AFF | United Health Care | Bank of America | 4/22/13 | QC55741762 | $1,199.99 |
| AFF | United Health Care | Chase | 1/28/13 | PH85809975 | $463.21 |
| AFF | United Health Care | Bank of America | 4/15/13 | PG38962829 | $352.51 |
| AFF | United Health Care | Chase | 1/7/13 | PH85666884 | $1,911.00 |
| AFF | United Health Care | Bank of America | 1/7/13 | L015253669 | $1,045.85 |
| AFF | United Health Care | Chase | 1/7/13 | PH85668207 | $1,758.39 |
| AFF | United Health Care | Bank of America | 1/22/13 | QC05336566 | $1,371.40 |
| AFF | United Health Care | Bank of America | 1/22/13 | PG38067765 | $1,180.51 |
| AFF | United Health Care | Chase | 2/4/13 | PH85845471 | $572.25 |
| AFF | United Health Care | Bank of America | 2/4/13 | QCS5310858 | $1,771.40 |
| AFF | United Health Care | Chase | 2/11/13 | PH74520660 | $376.89 |
| AFF | United Health Care | Chase | 2/11/13 | PH85890612 | $366.45 |
| AFF | United Health Care | Bank of America | 2/11/13 | PG38283671 | $1,309.50 |
| AFF | United Health Care | Bank of America | 2/18/13 | QC05508758 | $801.34 |
| AFF | United Health Care | Bank of America | 5/6/13 | PG06908582 | $783.90 |
| AFF | United Health Care | Chase | 5/6/13 | PH86422067 | $1,944.86 |
| AFF | United Health Care | Chase | 5/20/13 | PH65945078 | $289.88 |
| AFF | United Health Care | Bank of America | 5/24/13 | PG39408749 | $1,431.42 |
| AFF | United Health Care | Chase | 5/24/13 | PH65986677 | $690.00 |
| AFF | United Health Care | Bank of America | 1/22/13 | QC05336566 | $1,371.40 |

| Our Company | Insurance Co. | Drawee/Bank | Date | Check # | Amount |
|---|---|---|---|---|---|
| ACC | United Health Care | * | 11/28/12 | QC04551856 | $480.24 |
| AHC | United Health Care | * | 2/4/13 | PG06027797 | $161.10 |
| AHC | United Health Care | * | 11/19/12 | PH37656840 | $1,794.39 |
| AHC | United Health Care | * | 11/19/12 | PG05335446 | $73.50 |
| AHC | United Health Care | * | 11/26/12 | QC04971473 | $992.67 |
| AHC | United Health Care | * | 12/3/12 | PH37793549 | $897.78 |
| AHC | United Health Care | * | 12/10/12 | PH37853276 | $296.85 |
| AHC | United Health Care | * | 12/24/12 | J815090400 | $715.20 |
| AHC | United Health Care | * | 12/24/12 | QC05166430 | $489.28 |
| AHC | United Health Care | * | 12/24/12 | PH37994909 | $261.90 |
| AHC | United Health Care | * | 12/31/12 | PH38066606 | $469.88 |
| AHC | United Health Care | * | 12/31/12 | QC05215537 | $119.64 |
| AHC | United Health Care | * | 12/31/12 | PH38070986 | $268.50 |
| AHC | United Health Care | * | 12/31/12 | PG05707496 | $213.01 |

| AHC | United Health Care | * | 12/24/12 | PH02214626 | $375.67 |
|---|---|---|---|---|---|
| AHC | United Health Care | * | 12/24/12 | PH02214170 | $88.20 |

| AHC | United Health Care | Fleet National Bank | 12/11/2006 | VP24176570 | $ |
|---|---|---|---|---|---|
| AHC | United Health Care | Fleet National Bank | 12/11/2006 | VP24176580 | $499.59 |
| AHC | United Health Care | Fleet National Bank | 12/11/2006 | VP24176560 | $408.00 |
| AHC | United Health Care | Fleet National Bank | 09/29/2008 | VT09739840 | $7.35 |
| AHC | United Health Care | Fleet National Bank | 09/28/2008 | VT09739850 | $640.00 |
| AHC | United Health Care | Chase Manhattan Bank | 12/11/2006 | 2A26108440 | $339.84 |
| AHC | United Health Care | Chase Manhattan Bank | 12/11/2006 | UQ5310451 | $63.27 |
| AHC | United Health Care | Chase Manhattan Bank | 12/18/2006 | OT25078190 | $709.58 |
| AHC | United Health Care | Chase Manhattan Bank | 12/18/2006 | OT25078200 | $191.71 |
| AHC | United Health Care | Chase Manhattan Bank | 12/18/2006 | UQ58684820 | $561.51 |
| AHC | United Health Care | Chase Manhattan Bank | 09/28/2008 | UV60339440 | $191.88 |
| AHC | United Health Care | Chase Manhattan Bank | 04/22/2013 | PH39610218 | $93.75 |
| AHC | United Health Care | Bank of America | 02/15/2013 | PG05962026 | $65.63 |
| AHC | United Health Care | Bank of America | 04/23/2013 | QC05897668 | $867.83 |
| AHC | United Health Care | Bank of America | 02/16/2013 | QC05510285 | $138.82 |
| AHC | United Health Care | Bank of America | 02/04/2013 | PG06027797 | $161.10 |
| AHC | United Health Care | Bank of America | 01/26/2013 | QC05381040 | $87.30 |
| AHC | United Health Care | Bank of America | 01/26/2013 | L015258632 | $774.85 |
| AHC | United Health Care | Bank of America | 02/04/2013 | QC0542327 | $468.50 |
| AHC | United Health Care | Chase | 05/06/2013 | PH7493571 | $71.25 |
| AHC | United Health Care | Chase | 05/06/2013 | PH39798768 | $243.75 |
| AHC | United Health Care | Chase | 05/23/2013 | PH39976705 | $134.25 |
| AHC | United Health Care | Chase | 05/20/2013 | PH39980525 | $750.00 |

| AHC | United Health Care | Chase | 02/04/2013 | PH38507651 | $128.01 |
|---|---|---|---|---|---|
| AHC | United Health Care | Chase | 02/04/2013 | PH38509554 | $115.09 |
| AHC | United Health Care | Chase | 01/26/2013 | PH38384893 | $202.21 |

| AFF | United Health Care | * | 06/20/2011 | PH32145882 | $116.2 |
|---|---|---|---|---|---|
| AFF | United Health Care | * | 08/01/2011 | PH81844144 | $3,332.9 |
| AFF | United Health Care | * | 07/11/2011 | PH61527077 | $2,359.5 |
| AFF | United Health Care | * | 06/13/2011 | QC51403657 | $7.8 |
| AFF | United Health Care | Bank of America | 01/31/2011 | PG00386697 | $1,089.0 |
| AFF | United Health Care | Chase | 01/31/2011 | PH80450663 | $745.5 |

| | | | | | |
|---|---|---|---|---|---|
| AFF | United Health Care | Bank of America | 02/14/2011 | PH80551479 | $339.0 |
| AFF | United Health Care | Bank of America | 02/14/2011 | QCS0519615 | $1,367.63 |
| AFF | United Health Care | Bank of America | 02/14/2011 | PH60494257 | $2,268.7 |
| AFF | United Health Care | Bank of America | 02/28/2011 | PH80646296 | $2,178.0 |
| AFF | United Health Care | Bank of America | 02/28/2011 | PH60588363 | $1,407.2 |
| AFF | United Health Care | Bank of America | 02/28/2013 | QCS0616240 | $1,439.9 |
| AFF | United Health Care | Bank of America | 03/07/2011 | PG30982751 | $1,600.0 |
| AFF | United Health Care | Chase | 03/14/201 | PH80754187 | $1,089.0 |
| AFF | United Health Care | Bank of America | 03/14/2011 | L015031933 | $1,075 |
| AFF | United Health Care | Chase | 03/14/2011 | PH80763288 | $1,874.8 |
| AFF | United Health Care | Bank of America | 03/14/2011 | QCS0719224 | $739 |
| AFF | United Health Care | Chase | 03/21/2011 | PH80814245 | $1,089.0 |
| AFF | United Health Care | Bank of America | 03/21/201 | PG00713690 | $1,089.0 |
| AFF | United Health Care | Bank of America | 03/21/201 | L015034130 | $1,179.7 |
| AFF | United Health Care | Bank of America | 04/25/2011 | PG31547566 | $2,734.3 |
| AFF | United Health Care | Bank of America | 04/18/2011 | QC00943326 | $1,645.6 |
| AFF | United Health Care | Chase | 05/16/2011 | PH81244001 | $1,156.8 |
| AFF | United Health Care | Chase | 05/16/2011 | PH61119284 | $1,191.7 |
| AFF | United Health Care | Bank of America | 05/16/2011 | PG31785339 | $2,516.2 |
| AFF | United Health Care | Bank of America | 05/16/2011 | PG01103286 | $789.0 |
| AFF | United Health Care | Bank of America | 06/13/2011 | PH32067829 | $351.6 |
| AFF | United Health Care | Chase | 06/13/201 | PH81482655 | $1,469.05 |
| AFF | United Health Care | Chase | 06/06/2011 | PH81417107 | $2,927.7 |
| AFF | United Health Care | Chase | 06/20/2011 | PH81538758 | $488.89 |
| AFF | United Health Care | Chase | 08/29/2011 | PH82059259 | $2,178.0 |
| AFF | United Health Care | Bank of America | 08/29/201 | QC51943262 | $39.9 |
| AFF | United Health Care | Chase | 09/01/2011 | PH82093220 | $569.7 |
| AFF | United Health Care | Bank of America | 09/19/2011 | PH82218519 | $1,839.3 |
| AFF | United Health Care | Bank of America | 09/19/2011 | QC52093386 | $634.20 |
| AFF | United Health Care | Bank of America | 10/06/2011 | QC52217884 | $323.63 |
| AFF | United Health Care | Bank of America | 10/17/2011 | MH30072657 | $692.25 |
| AFF | United Health Care | Bank of America | 10/31/2011 | PH33371684 | $1,418.5 |
| AFF | United Health Care | Bank of America | 10/24/2011 | QC52330966 | $1,270.50 |
| AFF | United Health Care | Chase | 10/24/2011 | PH82482524 | $2,738.8 |
| AFF | United Health Care | Bank of America | 10/31/2011 | QC02290347 | $1,234.20 |
| AFF | United Health Care | Chase | 10/31/2011 | PH62305446 | $1,089.0 |
| AFF | United Health Care | Bank of America | 10/31/2011 | PH33371684 | $1,418.5 |

| AFF | United Health Care | Bank of America | 11/17/2011 | PG33611281 | $681.0 |
|---|---|---|---|---|---|
| AFF | United Health Care | Bank of America | 11/07/2011 | QC02349584 | $416.7 |
| AFF | United Health Care | Bank of America | 11/14/2011 | L015119952 | $854.7 |
| AFF | United Health Care | Bank of America | 11/14/2011 | PH82650557 | $686.2 |
| AFF | United Health Care | Bank of America | 11/21/2011 | PG33764778 | $181.6 |
| AFF | United Health Care | Bank of America | 11/21/2011 | L015123300 | $854.7 |
| AFF | United Health Care | Bank of America | 11/28/2011 | PH82768816 | $745.5 |
| AFF | United Health Care | Bank of America | 11/28/2011 | L015125248 | $1,210.3 |
| AFF | United Health Care | Bank of America | 11/28/2011 | PG33820601 | $1,089 |
| AFF | United Health Care | Bank of America | 12/05/2011 | PH82814461 | $849.0 |
| AFF | United Health Care | Bank of America | 12/05/2011 | PG33893531 | $1,041.3 |
| AFF | United Health Care | Chase | 07/18/2011 | PH61569152 | $1,270.5 |
| AFF | United Health Care | Chase | 06/27/2011 | PH81589839 | $1,342.6 |
| AFF | United Health Care | Chase | 06/27/2011 | PH32216685 | $169.0 |
| AFF | United Health Care | Bank of America | 06/27/2011 | PG32260484 | $1,270.5 |
| AFF | United Health Care | Bank of America | 06/21/2011 | QC01405138 | $1,258 |
| AFF | United Health Care | Bank of America | 06/13/2011 | PH61330459 | $307.3 |
| AFF | United Health Care | Bank of America | 06/06/2011 | QC51336216 | $253.6 |
| AFF | United Health Care | Chase | 06/06/2011 | PH61281438 | $1,270.5 |
| AFF | United Health Care | Bank of America | 05/26/2011 | PG31902801 | $339.5 |
| AFF | United Health Care | Chase | 01/10/2011 | QL41069197 | $1,452.0 |
| AFF | United Health Care | Chase | 01/10/2011 | PH80290196 | $1,089.0 |
| AFF | United Health Care | Bank of America | 01/10/2011 | QC50274275 | $1,234.2 |

| Company | Insurance Co. | Drawee/Bank | Date | Check # | Amount |
|---|---|---|---|---|---|
| AFF | Aetna | * | 4/4/13 | 08608-031067849 | $1,617.06 |
| Af:F | Aetna | * | 5/30/13 | 09822-009642020 | $2,054.40 |
| AFF | Aetna | Citi | 4/19/12 | 085232819 | $3,251.67 |
| AFF | Aetna | Bank of America | 3/22/12 | 000898057 | $599.90 |
| AFF | Aetna | Citi | 4/19/12 | 026736131 | $34.20 |
| AFF | Aetna | Citi | 3/22/12 | 084752229 | $1,234.20 |
| AFF | Aetna | Citi | 3/15/12 | 026266637 | $1,428.57 |
| AFF | Aetna | Bank of America | 3/8/12 | 000572996 | $1,645.60 |
| AFF | Aetna | Citi | 2/16/12 | 084096340 | $1,234.20 |
| AFF | Aetna | Citi | 2/2/12 | 025730524 | $1,271.37 |
| AFF | Aetna | Citi | 2/2/12 | 083834438 | $2,057.00 |
| AFF | Aetna | Bank of America | 1/26/12 | 095069133 | $874.20 |
| AFF | Aetna | Citi | 1/19/12 | 025561262 | $1,194.09 |

| | | | | | |
|---|---|---|---|---|---|
| AFF | Aetna | Bank of America | 1/19/12 | 094917356 | $241.20 |
| AFF | Aetna | Bank of America | 2/21/13 | 007773909 | $2,214.25 |
| AFF | Aetna | Citi | 2/21/13 | 090290286 | $1,328.55 |
| AFF | Aetna | Bank of America | 2/7/13 | 007503596 | $1,571.40 |

| Our Company | Insurance Co. | Drawee/Bank | Date | Check # | Amount |
|---|---|---|---|---|---|
| AHC | AETNA | * | 1/17/13 | 08333-001714958 | $671.25 |
| AHC | AETNA | * | 1/17/13 | 09822-007089163 | $671.25 |
| AHC | AETNA | Bank of America | 1/24/13 | 09822-007222022 | $369.20 |
| AHC | AETNA | * | 1/31/13 | 08333-001738556 | $25.60 |
| AHC | AETNA | * | 2/7/13 | 09822-007494579 | $1,342.50 |
| AHC | AETNA | * | 4/25/13 | 08608-031324765 | $133.87 |
| AHC | AETNA | * | 6/6/13 | 08325-091903215 | $358.35 |
| AHC | AETNA | * | 6/6/13 | 08333-001985684 | $402.75 |
| AHC | AETNA | * | 6/20/13 | 09822-010049013 | $35.62 |
| AHC | AETNA | * | 6/20/13 | 08608-032040273 | $5.99 |

| | | | | | |
|---|---|---|---|---|---|
| AFF | Aetna | Bank of America | 05/26/2011 | 078869206 | $943.80 |
| AFF | Aetna | Bank of America | 05/26/2011 | 089286272 | $783.90 |
| AFF | Aetna | Bank of America | 06/09/2011 | 079154413 | $2,537.30 |
| AFF | Aetna | Bank of America | 06/09/2011 | 089622039 | $1,573.00 |
| AFF | Aetna | Bank of America | 06/16/2011 | 089799398 | $887.25 |
| AFF | Aetna | Bank of America | 07/14/2011 | 079884244 | $943.80 |
| AFF | Aetna | Bank of America | 07/14/2011 | 023269045 | $943.80 |
| AFF | Aetna | Bank of America | 08/11/2011 | 080446888 | $653.25 |
| AFF | Aetna | Bank of America | 08/11/2011 | 091157117 | $2,389.72 |
| AFF | Aetna | Bank of America | 08/11/2011 | 019842877 | $1,038.34 |
| AFF | Aetna | Bank of America | 09/01/2011 | 091667774 | $1,439.89 |
| AFF | Aetna | Bank of America | 09/22/2011 | 081271372 | $1,578.46 |
| AFF | Aetna | Bank of America | 10/20/2011 | 081822572 | $1,439.89 |
| AFF | Aetna | Bank of America | 10/20/2011 | 092819032 | $2,057.00 |
| AFF | Aetna | Bank of America | 10/27/2011 | 081966138 | $2,057.00 |
| AFF | Aetna | Bank of America | 10/27/2011 | 092993273 | $1,645.60 |
| AFF | Aetna | Bank of America | 10/27/2011 | 024559446 | $1,234.20 |
| AFF | Aetna | Bank of America | 11/17/2011 | 093483882 | $2,418.24 |
| AFF | Aetna | Bank of America | 11/17/2011 | 093483882 | $2,418.24 |
| AFF | Aetna | Bank of America | 12/29/2011 | 083207570 | $3,026.13 |
| AFF | Aetna | Bank of America | 12/29/2011 | 025328433 | $1,439.89 |
| AFF | Aetna | Bank of America | 12/29/2011 | 094466641 | $993.28 |

The spreadsheet continues.

31. From 1992 until 2013, Devon Bank, TCF Bank, the drawer banks, specifically, Citibank, Bank of America and PNC Bank and the health insurance carriers did not investigate Irina Nakhshin or contact the plaintiffs to notify them that Irina Nakhshin was depositing or attempting to deposit checks made payable to "Affiliated Health Group, Ltd.", "American Health Center, Ltd.", "Dimensions Medical Center, Ltd." or any other plaintiffs into accounts that she owned or controlled.

32. At no time did the plaintiffs indorse any check made payable to "Affiliated Health Group Ltd.", "American Health Center, Ltd.", "Dimensions Medical Center, Ltd." or any other plaintiffs which was deposited into the Devon Bank or TCF Bank.

33. At no time did the plaintiffs authorize the deposit of any checks into any account at Devon Bank or TCF Bank.

34. From 1992 until 2013, Irina Nakhshin and her affiliates deposited numerous checks into the aforesaid accounts at Devon Bank and TCF Bank and withdrew the money the same day or shortly thereafter.

35. At no time did Irina Nakhshin or her affiliates provide Devon Bank or TCF Bank with any proof or documentation that she was authorized to negotiate checks on behalf of "Affiliated Health Group, Ltd.", "American Health Center, Ltd.", "Dimensions Medical Center, Ltd." or any other plaintiffs.

**D. *Specific Factual Allegations Regarding Citibank, Bank of America and PNC Bank's Failure to Implement Fraud Detection Policies and Procedures***

36. In its dual function as both one of the depositor banks holding personal accounts for embezzlers Nahkshin and Koganshats, as well as the drawer bank of various health insurance carriers, Citibank, Bank of America and PNC Bank failed to comply with reasonable banking standards.

37. From 1992 to 2013, Citibank, Bank of America and PNC Bank had or should have had computer software programs and other procedures to identify "red flags."

38. At all relevant times, reasonable commercial banking standards required that a bank is required to collect and maintain certain information concerning their customers. The bank must maintain procedures that allowed it to "form a reasonable belief that it knows the true identify of each customer." 31 CPR Section 1020.22(a)(l),(2). To accomplish this, the bank is required to collect information about the holder of each account. 31 CFR

Section 1020.220(a)(2). When an account is opened by an entity rather than an individual, the bank must obtain information about the individuals with authority or control over the account. 31 CPR Section 1020.22(a)(2)(ii)( c).

39. At all relevant times, reasonable commercial banking standards required that a bank must also develop a Customer Due Diligence (CDD) program that assists in predicting the types of transactions, dollar volume, and transaction volume each customer is likely to conduct, and which provides the bank with a way to identify unusual or suspicious transactions for each customer. The CDD programs allows the bank to maintain an awareness of the unique financial details of its customers and the ability to predict the type and frequency of transactions in which its customers are likely to engage.

40. At all relevant times, reasonable commercial banking standards required that a bank must ensure compliance as a condition of employment and incorporate compliance with the Bank Secrecy Act and its implementing regulations into job descriptions and performance evaluations for its employees. The bank must also train all operational personnel whose duties may require knowledge of the Bank Secrecy Act, including tellers and wire room personnel, on the BSA including identification of various "red flags" discussed below.

41. At all relevant times, reasonable commercial banking standards required that the bank must identify a Bank Secrecy Act Compliance Officer who is a senior bank official and who is responsible for coordinating and monitoring complete compliance with the Bank Secrecy Act FDIC Rules & Regulations Section 326.8. The Bank Secrecy Compliance Officer is required to designate an individual at each office or branch to monitor the bank's day to day compliance with the BSA.

42. On and after 1992, Citibank, Bank of America and PNC Bank and its predecessor banks were required pursuant to reasonable commercial banking standards to gather and develop profiles of normal and expected activity for any given account. The defendant was further required to evaluate whether the transactions were reasonable given the nature of the account, its industry and geographic location.

43. On and after 1992, Citibank, Bank of America and PNC Bank and its predecessor banks were required pursuant to reasonable commercial banking standards to identify or "red flag", *inter alia*, the following transactions in their customer's (both drawer and depositor) accounts:

a. Transfers of large sums of money into the account;

b. Transfers of money in even amounts;

c. Transfers of money into and out of an account in a short period of time;

      d. Fund deposits and transfers in unusual patterns; and

e. Payments from an account which would be inconsistent with the purpose of the account here constituting purported payments and transactions of a medical practice group.

44. On and after 1992, numerous "red flags " existed, highly irregular or highly suspicious transactions took place with respect to the "Affiliated Health Group **Billing, Inc.**" and "American Health Center **for Billing, Inc.**" accounts being presented to Citibank, Bank of America and PNC Bank for acceptance and negotiation for a period of over 20 years:

a. Transfers of large sums of money in and out of the aforesaid accounts in excess of $25,000.00;

b. Large sums of money transferred into the aforesaid accounts in even amounts;

c. Large sums of money coming into and going out of the aforesaid accounts on the same day and/or in a short period of time;

d. Fund deposits and withdrawals in unusual patterns; and

e. Withdrawal of large amounts of cash and/or cash transactions inconsistent with any purpose of a medical practice group.

45. On and after 1992, and for the next 20 years, Citibank, Bank of America and PNC Bank and its predecessor banks violated reasonable commercial banking standards by "turning a blind eye" by not identifying, investigating and reporting these numerous "red flags.”

46. The Federal Financial Institutions Examination Counsel (FFIEC) has identified “red flags” that should cause a bank or its employees to inquire further and potentially file a suspicious activity report. The "Affiliated Health Group **Billing, Inc.**" and "American Health Center **for Billing, Inc.**” accounts at issue triggered at least the following “red flags”:

a. Inconsistent deposit and withdrawal activity;

b. Frequent deposits or withdrawals with no apparent business source;

c. Transactions that are not consistent with the customer’s business;

d. Intrabank transfers between accounts owned or controlled by common individuals;

e. Large balances in non-interest bearing accounts;

f. Appearance of using account as temporary repository of funds;

g. Deposits and immediate requests for wire transfers or cash shipments;

h. Large deposits and balances; and

i. On and after 1992, hundreds of transactions with Irina Nakhshin made into and out of the aforesaid accounts should have and did trigger “red flags” which would require investigation pursuant to reasonable commercial banking standards.

47. At all relevant times, employees of Citibank, Bank of America and PNC Bank intentionally accepted and negotiated checks presented by Devon Bank and TCF Bank which in turn permitted and allowed Irina Nakhshin to deposit millions of dollars of checks made payable to "Affiliated Health Group, Ltd.", "American Health Center, Ltd.", "Dimensions Medial Center" and other plaintiffs in violation of Citibank, Bank of America and PNC Bank’s internal policies and procedures and in violation of reasonable commercial banking standards.

48. On each and every instance in which employees of Citibank, Bank of America and PNC Bank accepted and negotiated checks presented by Devon Bank and TCF Bank, which in turn allowed Irina Nakhshin to deposit checks made payable to "Affiliated Health Group, Ltd." , "American Health Center, Ltd." and "Dimensions Medical Center", they did so in violation of reasonable commercial banking standards and knowing that Irina Nakhshin was violating her fiduciary duty to Affiliated Health Group, Ltd. and other plaintiffs.

49. Citibank, Bank of America and PNC Bank failed to implement fraud detection policies and procedures pursuant to 31 CPR Section 1020.22(a)(1),(2).

50. Citibank, Bank of America and PNC Bank failed to develop a Customer Due Diligence program (CDD).

51. Citibank, Bank of America and PNC Bank failed to comply with the Bank Secrecy Act FDIC Rules & Regulations Section 326.8.

52. Citibank, Bank of America and PNC Bank failed to adhere to the Federal Financial Institutions Examination Counsel ("FFIEC") "red flags" list.

53. At all relevant times, reasonable commercial banking standards required that banks not accept or negotiate checks which were not properly indorsed by the payee.

54. At all relevant times, Citibank, Bank of America and PNC Bank were prohibited by reasonable commercial banking standards from accepting or negotiating checks which were not indorsed by the proper payee.

***D. From 1992 to 2013, Multiple Health Insurance Companies Created and Owed Statutory Duties to the Plaintiffs Based Upon the Checks They Wrote***

55. From 1992 to 2013, the plaintiffs received payments in the form of written checks from various healthcare insurance companies for payment of services rendered by the plaintiffs.

56. From 1992 to 2013, the plaintiffs received payments in the form of written checks from the following health insurance companies.

a. Blue Cross/Blue Shield a/k/a Healthcare Service Corporation;

b. United Healthcare

c. AETNA

d. Cigna

e. Elmcare

f. Gottlieb

g. GE Health Care Preferred

h. Medica

1. Ingalls Provider Group

J. Elmbrook Schools

k. Benefit Administrative System

1. Access Community Health Network

m. Lincolnway Area Affiliation

n.     The Guardian Life Insurance

57.     From 1992 to 2013, the drawers of the aforesaid checks made payable to the plaintiffs were the aforesaid health insurance companies themselves.

58.     Citibank, Bank of America and PNC Bank were the drawer banks for various health insurance companies that issued hundreds of thousands of dollars in checks made payable to the plaintiffs.

59.     From 1992 to 2013, the aforesaid health insurance companies as drafters of the checks owed certain statutory promises upon the transfer of these checks to the plaintiffs such that the drafters promised to pay the plaintiffs, even if a person held liable on the checks due to embezzlement or theft does not ultimately pay.

60.     On and prior to 2013, when Irina Nakhshin and Inna Koganshats, indorsed the back of these checks made payable to the plaintiffs, the endorsement was wholly ineffective due to lack of authority, as well as indorsement by an improper payee.

61.     On and prior to 2013, once each of the aforesaid health insurance companies chose to issue a check payable to the plaintiffs,  an obligation  arose by the health insurance company here pursuant to UCC Section 3-310(b)(4) to the plaintiffs.  (810 ILCS 3-310(b)(4))

62.     At all relevant times, Section 810 ILCS 5/3-414 was in effect in the State of Illinois, the aforesaid health insurance companies as drawers of the checks were obligated to pay the payee if a check is dishonored or stolen and fraudulently cashed.

63.     At no time did Irina Nakhshin or Inna Koganshats become a legitimate or bona fide "holder in due course" of any of the checks that they stole and embezzled pursuant to 810 ILCS 5/3-301.

64.     Pursuant to 810 ILCS 5/3-205(b), even a legitimate holder in due course may make a check payable only by signing the check to the bearer. 810 ILCS 5/3-205(b).

65.     At no time were any indorsements by Irina Nakhshin or Inna Koganshats effective as the indorsement of Affiliated Health Group, Ltd. or any of the other plaintiffs and thus no payment was ever made to a legitimate holder of the instrument.  The checks issued by each of the aforesaid health insurance companies and nefariously cashed or deposited by the embezzlers remain unpaid to the plaintiffs.

66.     Payment to the embezzlers by the drawers and their banks did not in any way extinguish the duty of the drawer insurance companies to pay the payee plaintiffs in the amount of each and every check issued for healthcare services.

**Count I**
**(Affiliated Health Group, Ltd. – Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1.     Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67.     On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68.     On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69.     On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70.     On and after 1992, plaintiff, Affiliated Health Group., Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Affiliated Health Group., Ltd.

71.     On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72.     On and after 1992, plaintiff, Affiliated Health Group, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73.     On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74.     On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Affiliated Health Group, Ltd.", Devon Bank converted the plaintiff's funds.

75.     On and after 1992, Devon Bank converted numerous checks made payable to "Affiliated Health Group, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76.     On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77.     On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78.     On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally paying on checks which were made to a particular payee "Affiliated Health Group, Ltd ." but endorsed as "Affiliated Health Group **Billing, Inc.**" or "American Health Center **for Billing Inc.**"

79.     On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

        Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count II**
**(Affiliated Health Group, Ltd. - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1.      Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67.     On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68.     On and after 1992, Irina Nakhshin deposited numerous checks payable to "Affiliated Health Group, Ltd." at Devon Bank, none of which were properly indorsed.

69.     At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70.     On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiffs' funds into her personal account.

73. On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Affiliated Health Group, Ltd.

75. On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiffs in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts of the health insurance companies; or

    d.    failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Affiliated Health Group, Ltd . suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

    Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count III**
**(American Health Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420 .

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, American Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to American Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff , American Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff · received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "American Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "American Health Center Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "American Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count IV**
**(American Health Center, Ltd. - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "American Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nahkshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to American Health Center, Ltd.

75.     On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

      a.     negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

      b.     failed to obtain proper documentation or proof regarding the authority of Irina Nahkshin to deposit checks in the name of the plaintiff; or

      c.     failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

      d.     failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

      e.     failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

      f.     failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

      g.     intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, the American Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

      Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count V**
**(Dimensions Medical Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Dimensions Medical Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Dimensions Medical Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Dimensions Medical Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Dimensions Medical Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Dimensions Medical Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Dimensions Medical Center, Ltd ." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count VI**
**(Dimensions Medical Center, Ltd. - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Dimensions Medical Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73. On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Dimensions Medical Center, Ltd.

75. On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Dimensions Medical Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count VII**
**(Access Health Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument" , 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Access Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Access Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false :fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Access Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Access Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Access Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Access Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count VIII**
**(Access Health Center, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Access Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.   On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.   On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Access Health Center, Ltd.

75.   On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.    failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.   As a direct and/or result of one or more of the aforesaid negligent acts, the Access Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

   Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count IX**
**(ACU Health Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled “Conversion of Instrument”, 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a “payee” who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, ACU Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to ACU Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, ACU Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to “ACU Health Center, Ltd.”, Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to “ACU Health Center, Ltd.” in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "ACU Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count X**
**(ACU Health Center, Ltd. - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "ACU Health Center, Ltd." at Devon Bank, none of which were properly indorsed .

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73. On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of “red flags” were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to ACU Health Center, Ltd.

75. On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

c. failed to implement proper policies and procedures which would identify “red flags” in the accounts opened by Irina Nakhshin; or

d. failed to investigate and/or report on “red flags” known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

e. failed to “know the client” concerning the accounts opened by Irina Nakhshin ; or

f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation’s name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the ACU Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the “Affiliated Health Group Billing, Inc.” or “American Health Center for Billing Inc.” accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys’ fees and costs.

**Count XI**
**(Advantage Health Care, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after l 992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion .

70. On and after 1992, plaintiff, Advantage Health Care, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Advantage Health Care, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Advantage Health Care, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Advantage Health Care, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Advantage Health Care, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Advantage Health Care, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XII**
**(Advantage Health Care, Ltd. - Citibank Corporation – Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Advantage Health Care, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks .

70. On and after 1992, Devon Bank owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73. On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Advantage Health Care, Ltd.

75. On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c. failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d. failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e. failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Advantage Health Care, Ltd. suffered economic loss including, but not limited to, the amount of each

check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XIII**
**(AAnchor Health Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement ad the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, AAnchor Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to AAnchor Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, AAnchor Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, plaintiff, AAnchor Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "AAnchor Health Center, Ltd.", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "AAnchor Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and .after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "AAnchor Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XIV**
**(AAnchor Health Center, Ltd. - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "AAnchor Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to AAnchor Health Center, Ltd.

75.     On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

        a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

        b.      failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

        c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

        d.      failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

        e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

        f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

        g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the AAnchor Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the “Affiliated Health Group Billing, Inc.” or “American Health Center for Billing Inc.” accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys’ fees and costs.

**Count XV**
**(Forestview Medical Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled “Conversion of Instrument”, 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a “payee” who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Forestview Medical Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Forestview Medical Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false: fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Forestview Medical Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff’s staff at the plaintiff’s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took . possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to “Forestview Medical Center, Ltd.”, Devon Bank converted the plaintiff’s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Forestview Medical Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Forestview Medical Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XVI**
**(Forestview Medical Center, Ltd. - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Forestview Medical Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks..

70. On and after 1992, Devon Bank owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account

73.     On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Forestview Medical Center, Ltd.

75.     On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to ''know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior .to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Forestview Medical Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XVII**
**(Michigan Avenue Center for Health, Ltd. – Citibank Corporation-**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Michigan Avenue Center for Health, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Michigan Avenue Center for Health, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Michigan Avenue Center for Health, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Michigan Avenue Center for Health, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Michigan Avenue Center for Health, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Michigan Avenue Center for Health, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XVIII**
**(Michigan Avenue Center for Health, Ltd. - Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Michigan Avenue Center for Health, Ltd." at Devon Bank, none of which were properly endorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73. On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Citibank Corporation owed a duty of care to the plaintiff to not deposit and/or negotiate the aforesaid checks made payable to Michigan Avenue Center for Health, Ltd.

75. On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

c. failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

d. failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

e. failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Michigan Avenue Center for Health, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XIX**
**(ACE Health Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Ace Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Ace Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Ace Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Ace Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to “Ace Health Center, Ltd.” in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee “Ace Health Center, Ltd.” but indorsed as ”Affiliated Health Group Billing, Inc.” or “American Health Center for Billing Inc.”

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XX**
**(ACE Health Center, Ltd. – Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to “Ace Health Center, Ltd.” at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.    On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.    On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.    On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.    On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Ace Health Center, Ltd.

75.    On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.    As a direct and/or result of one or more of the aforesaid negligent acts, the Ace Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each

check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fee and costs.

**Count XXI**
**(Center for Family Health Care, SC - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. -Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Center for Family Health Care, SC held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Center for Family Health Care, SC

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks .

72. On and after 1992, plaintiff, Center for Family Health Care, SC was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Center for Family Health Care, SC", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Center for Family Health Care, SC" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Center for Family Health Care, SC" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXII**
**(Center for Family Health Care, SC - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Center for Family Health Care, SC" at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.    On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.    On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.    On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Center for Family Health Care, SC

75.    On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.    failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.    As a direct and/or result of one or more of the aforesaid negligent acts, the Center for Family Health Care, SC suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXIII**
**(Vijay L. Goyal, MD- Citibank Corporation- Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument" , 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, VIJAY L. GOYAL, MD held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to VIJAY L. GOYAL, MD

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, VIJAY L. GOYAL, MD was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin , an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "VIJAY L. GOYAL, MD", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to ''VIJAY L. GOYAL, MD" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "VIJAY L. GOYAL, MD" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXIV**
**(Vijay L. Goyal, MD - Citibank Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Ace Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Ace Health Center, Ltd.

75.     On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.     negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

   b.     failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.     failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.     failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.     failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.     failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.     intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, the Ace Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

        Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fee and costs.

**Count XXV**
**(Vinod K. Goyal, MD - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled “Conversion of Instrument”, 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a “payee” who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Vinod K. Goyal, MD held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Vinod K. Goyal, MD

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Vinod K. Goyal, MD was the payee of the checks stolen by Irina Nak.hshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin , an agent of the plaintiffs , took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to “Vinod K. Goyal, MD”, Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to “Vinod K. Goyal, MD” in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Citibank Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Citibank Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Vinod K. Goyal, MD" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Citibank Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore , plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXVI**
**(Vinod K. Goyal, MD- Citibank Corporation- Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Vinod K. Goyal, MD" at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account .

73. On and after 1992, Citibank Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Citibank Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Vinod K. Goyal, MD.

75.     On and after 1992, Citibank Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

      a.     negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

      b.     failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

      c.     failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

      d.     failed to investigate and/or report on "red flags" known to Citibank Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

      e.     failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

      f.     failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

      g.     intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, Vinod K. Goyal, MD suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

      Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXVII**
**(Affiliated Health Group, Ltd. – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1.     Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67.    On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68.    On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69.    On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70.    On and after 1992, plaintiff, Affiliated Health Group., Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Affiliated Health Group., Ltd.

71.    On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72.    On and after 1992, plaintiff, Affiliated Health Group, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73.    On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74.    On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Affiliated Health Group, Ltd.", Devon Bank converted the plaintiff's funds.

75.    On and after 1992, Devon Bank converted numerous checks made payable to "Affiliated Health Group, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76.    On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77.    On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally paying on checks which were made to a particular payee "Affiliated Health Group, Ltd ." but endorsed as "Affiliated Health Group **Billing, Inc.**" or "American Health Center **for Billing Inc.**"

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXVIII**
**(Affiliated Health Group, Ltd. – Bank of America Corporation Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Affiliated Health Group, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiffs' funds into her personal account.

73.   On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.   On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Affiliated Health Group, Ltd.

75.   On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiffs in one or more of the following respects:

   a.   negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.   failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.   failed to implement proper policies and procedures which would identify "red flags" in the accounts of the health insurance companies; or

   d.   failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.   failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.   failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.   intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.   As a direct and/or result of one or more of the aforesaid negligent acts, the Affiliated Health Group, Ltd . suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group **Billing, Inc.**" or "American Health Center **for Billing Inc.**" accounts.

       Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXIX**
**(American Health Center, Ltd. – Bank of America Corporation - Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420 .

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, American Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to American Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, American Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff · received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "American Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "American Health Center Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "American Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXX**
**(American Health Center, Ltd. – Bank of America Corporation - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "American Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nahkshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to American Health Center, Ltd.

75.     On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nahkshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, the American Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

    Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXXI**
**(Dimensions Medical Center, Ltd. – Bank of America Corporation - Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Dimensions Medical Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Dimensions Medical Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Dimensions Medical Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Dimensions Medical Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Dimensions Medical Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Dimensions Medical Center, Ltd ." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXXII**
**(Dimensions Medical Center, Ltd. – Bank of America Corporation - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Dimensions Medical Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.  On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.  On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Dimensions Medical Center, Ltd.

75.  On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.  negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.  failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.  failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.  failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.  failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.  failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.  intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.  As a direct and/or result of one or more of the aforesaid negligent acts, the Dimensions Medical Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

   Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXXIII**
**(Access Health Center, Ltd. – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument" , 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Access Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Access Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false, fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Access Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Access Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Access Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee “Access Health Center, Ltd.” but indorsed as “Affiliated Health Group Billing, Inc.” or “American Health Center for Billing Inc.”

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXXIV**
**(Access Health Center, Ltd. – Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to “Access Health Center, Ltd.” at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client’s accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff’s funds into her personal account.

73. On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Access Health Center, Ltd.

75. On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c. failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d. failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e. failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Access Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXXV**
**(ACU Health Center, Ltd. – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, ACU Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to ACU Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, ACU Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "ACU Health Center, Ltd.", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "ACU Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing

stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "ACU Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXXVI**
**(ACU Health Center, Ltd. – Bank of America Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "ACU Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.   On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.   On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to ACU Health Center, Ltd.

75.   On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.   negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.   failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.   failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.   failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.   failed to "know the client" concerning the accounts opened by Irina Nakhshin ; or

   f.   failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.   intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.   As a direct and/or result of one or more of the aforesaid negligent acts, the ACU Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

   Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXXVII**
**(Advantage Health Care, Ltd. – Bank of America Corporation Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after l 992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Advantage Health Care, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Advantage Health Care, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Advantage Health Care, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Advantage Health Care, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Advantage Health Care, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Advantage Health Care, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXXVIII**
**(Advantage Health Care, Ltd. – Bank of America Corporation – Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Advantage Health Care, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Devon Bank owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Advantage Health Care, Ltd.

75.     On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement;  or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, the Advantage Health Care, Ltd. suffered economic loss including, but not limited to, the amount of each

check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXXIX**
**(AAnchor Health Center, Ltd. – Bank of America Corporation Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement ad the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, AAnchor Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to AAnchor Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, AAnchor Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, plaintiff, AAnchor Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "AAnchor Health Center, Ltd.", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "AAnchor Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and .after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "AAnchor Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XL**
**(AAnchor Health Center, Ltd. – Bank of America Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "AAnchor Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to AAnchor Health Center, Ltd.

75.     On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the AAnchor Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XLI**
**(Forestview Medical Center, Ltd. – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Forestview Medical Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Forestview Medical Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false: fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Forestview Medical Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took . possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Forestview Medical Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Forestview Medical Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Forestview Medical Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXLII**
**(Forestview Medical Center, Ltd. – Bank of America Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Forestview Medical Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks..

70. On and after 1992, Devon Bank owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account

73. On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Forestview Medical Center, Ltd.

75. On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to ''know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior .to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Forestview Medical Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXLIII**
**(Michigan Avenue Center for Health, Ltd. – Bank of America Corporation-Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Michigan Avenue Center for Health, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Michigan Avenue Center for Health, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Michigan Avenue Center for Health, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Michigan Avenue Center for Health, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Michigan Avenue Center for Health, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Michigan Avenue Center for Health, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXLIV**
**(Michigan Avenue Center for Health, Ltd. – Bank of America Corporation-Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Michigan Avenue Center for Health, Ltd." at Devon Bank, none of which were properly endorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.  On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.  On and after 1992, Bank of America Corporation owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.  On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.  On and after 1992, Bank of America Corporation owed a duty of care to the plaintiff to not deposit and/or negotiate the aforesaid checks made payable to Michigan Avenue Center for Health, Ltd.

75.  On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

a.  negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

b.  failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

c.  failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

d.  failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

e.  failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

f.  failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

g.  intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, the Michigan Avenue Center for Health, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXLV**
**(ACE Health Center, Ltd. – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1.      Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67.     On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68.     On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69.     On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70.     On and after 1992, plaintiff, Ace Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Ace Health Center, Ltd.

71.     On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72.     On and after 1992, plaintiff, Ace Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73.     On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin,  an agent of the plaintiffs,  took possession of the checks.

74.     On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Ace Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Ace Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Ace Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXLVI**
**(ACE Health Center, Ltd. – Bank of America Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Ace Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73. On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Ace Health Center, Ltd.

75. On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Ace Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fee and costs.

**Count XXLVII**
**(Center for Family Health Care, SC – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. -Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Center for Family Health Care, SC held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Center for Family Health Care, SC

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks .

72. On and after 1992, plaintiff, Center for Family Health Care, SC was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Center for Family Health Care, SC", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Center for Family Health Care, SC" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Center for Family Health Care, SC" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count XXLVIII**
**(Center for Family Health Care, SC – Bank of America Corporation Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Center for Family Health Care, SC" at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.  On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.  On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.  On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.  On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Center for Family Health Care, SC

75.  On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

     a.  negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

     b.  failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

     c.  failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

     d.  failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

     e.  failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

     f.  failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

     g.  intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Center for Family Health Care, SC suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count XXLIX**
**(Vijay L. Goyal, MD- Bank of America Corporation- Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument" , 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, VIJAY L. GOYAL, MD held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to VIJAY L. GOYAL, MD

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, VIJAY L. GOYAL, MD was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin , an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "VIJAY L. GOYAL, MD", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to ''VIJAY L. GOYAL, MD" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "VIJAY L. GOYAL, MD" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count L**
**(Vijay L. Goyal, MD – Bank of America Corporation**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Ace Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.    On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.    On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.    On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.    On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Ace Health Center, Ltd.

77.    On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

   b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.    failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

   e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

78. As a direct and/or result of one or more of the aforesaid negligent acts, the Ace Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fee and costs.

**Count LI**
**(Vinod K. Goyal, MD – Bank of America Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Vinod K. Goyal, MD held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Vinod K. Goyal, MD

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Vinod K. Goyal, MD was the payee of the checks stolen by Irina Nak.hshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin , an agent of the plaintiffs , took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Vinod K. Goyal, MD", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Vinod K. Goyal, MD" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, Bank of America Corporation as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, Bank of America Corporation did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Vinod K. Goyal, MD" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, Bank of America Corporation owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LII**
**(Vinod K. Goyal, MD- Bank of America Corporation- Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Vinod K. Goyal, MD" at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, Bank of America Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.    On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.    On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.    On and after 1992, Bank of America Corporation owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.    On and after 1992, Bank of America Corporation owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Vinod K. Goyal, MD.

75.    On and after 1992, Bank of America Corporation was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to Bank of America Corporation concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, Vinod K. Goyal, MD suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LIII**
**(Affiliated Health Group, Ltd. – The PNC Financial Services Group, Inc. Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Affiliated Health Group., Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Affiliated Health Group., Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Affiliated Health Group, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Affiliated Health Group, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Affiliated Health Group, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally paying on checks which were made to a particular payee "Affiliated Health Group, Ltd ." but endorsed as "Affiliated Health Group **Billing, Inc.**" or "American Health Center **for Billing Inc.**"

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LIV**
**(Affiliated Health Group, Ltd. - The PNC Financial Services Group, Inc.- Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Affiliated Health Group, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiffs' funds into her personal account.

73. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Affiliated Health Group, Ltd.

75. On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiffs in one or more of the following respects:

   a.   negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.   failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.   failed to implement proper policies and procedures which would identify "red flags" in the accounts of the health insurance companies; or

   d.   failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

   e.   failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.   failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.   intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Affiliated Health Group, Ltd . suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LV**
**(American Health Center, Ltd. - The PNC Financial Services Group, Inc.- Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420 .

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, American Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to American Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, American Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff · received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "American Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "American Health Center Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "American Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Ltd. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LVI**
**(American Health Center, Ltd. – The PNC Financial Services Group, Inc. Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "American Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nahkshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to American Health Center, Ltd.

75.     On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nahkshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the American Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LVII**
**(Dimensions Medical Center, Ltd. - The PNC Financial Services Group, Inc. Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Dimensions Medical Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Dimensions Medical Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Dimensions Medical Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Dimensions Medical Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Dimensions Medical Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Dimensions Medical Center, Ltd ." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LVIII**
**(Dimensions Medical Center, Ltd. – The PNC Financial Services Group, Inc. Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Dimensions Medical Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Dimensions Medical Center, Ltd.

75.     On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Dimensions Medical Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LIX**
**(Access Health Center, Ltd. – The PNC Financial Services Group, Inc.**
**Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument" , 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Access Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Access Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false :fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Access Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Access Health Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Access Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Access Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LX**
**(Access Health Center, Ltd. – The PNC Financial Services Group, Inc. - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Access Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Access Health Center, Ltd.

75. On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

c. failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

d. failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

e. failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Access Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LXI**
**(ACU Health Center, Ltd. – The PNC Financial Services Group, Inc. Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, ACU Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to ACU Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, ACU Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "ACU Health Center, Ltd.", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "ACU Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "ACU Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXII**
**(ACU Health Center, Ltd. – The PNC Financial Services Group, Inc.**
**Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "ACU Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.    On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.    On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.    On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.    On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to ACU Health Center, Ltd.

75.    On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

   b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.    failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

   e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

   g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the ACU Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LXIII**
**(Advantage Health Care, Ltd. – The PNC Financial Services Group, Inc. - Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after l 992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Advantage Health Care, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Advantage Health Care, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Advantage Health Care, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Advantage Health Care, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Advantage Health Care, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Advantage Health Care, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXIV**
**(Advantage Health Care, Ltd. – The PNC Financial Services Group, Inc. – Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Advantage Health Care, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks .

70. On and after 1992, Devon Bank owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.    On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.    On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.    On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.    On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Advantage Health Care, Ltd.

75.    On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76.     As a direct and/or result of one or more of the aforesaid negligent acts, the Advantage Health Care, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LV**
**(AAnchor Health Center, Ltd. - Citibank Corporation**
**Violation of Section 3-420 of Uniform Commercial Code)**

1.      Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67.     On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68.     On and after 1992, the payment of a check over an unauthorized endorsement ad the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69.     On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70.     On and after 1992, plaintiff, AAnchor Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to AAnchor Health Center, Ltd.

71.     On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72.     On and after 1992, plaintiff, AAnchor Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73.     On and after 1992, plaintiff, AAnchor Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "AAnchor Health Center, Ltd.", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "AAnchor Health Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and .after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "AAnchor Health Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXVI**
**(AAnchor Health Center, Ltd. – The PNC Financial Services Group, Inc. Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "AAnchor Health Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70.     On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to AAnchor Health Center, Ltd.

75.     On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

   a.     negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

   b.     failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

   c.     failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

   d.     failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

   e.     failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

   f.     failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the AAnchor Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LXVII**
**(Forestview Medical Center, Ltd. – The PNC Financial Services Group, Inc. Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Forestview Medical Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Forestview Medical Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false: fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Forestview Medical Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took . possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Forestview Medical Center, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Forestview Medical Center, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Forestview Medical Center, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXVIII**
**(Forestview Medical Center, Ltd. – The PNC Financial Services Group, Inc. Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Forestview Medical Center, Ltd." at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks..

70. On and after 1992, Devon Bank owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account

73. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Forestview Medical Center, Ltd.

75. On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

c. failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

d. failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

e. failed to ‘‘know the client" concerning the accounts opened by Irina Nakhshin; or

f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior .to negotiating an instrument with the corporation's name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Forestview Medical Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LXIX**
**(Michigan Avenue Center for Health, Ltd. – The PNC Financial Services Group, Inc.- Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Michigan Avenue Center for Health, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Michigan Avenue Center for Health, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Michigan Avenue Center for Health, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Michigan Avenue Center for Health, Ltd.", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Michigan Avenue Center for Health, Ltd." in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Michigan Avenue Center for Health, Ltd." but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXX**
**(Michigan Avenue Center for Health, Ltd. – The PNC Financial Services Group, Inc. - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Michigan Avenue Center for Health, Ltd." at Devon Bank, none of which were properly endorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70.　　On and after 1992, Citibank Corporation owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.　　On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.　　On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiff to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73.　　On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.　　On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiff to not deposit and/or negotiate the aforesaid checks made payable to Michigan Avenue Center for Health, Ltd.

75.　　On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

　　　　a.　　negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

　　　　b.　　failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

　　　　c.　　failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

　　　　d.　　failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

　　　　e.　　failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

　　　　f.　　failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Michigan Avenue Center for Health, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LXXI**
**(ACE Health Center, Ltd. – The PNC Financial Services Group, Inc. Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Ace Health Center, Ltd. held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Ace Health Center, Ltd.

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Ace Health Center, Ltd. was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to “Ace Health Center, Ltd.”, Devon Bank converted the plaintiff’s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to “Ace Health Center, Ltd.” in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee “Ace Health Center, Ltd.” but indorsed as ”Affiliated Health Group Billing, Inc.” or “American Health Center for Billing Inc.”

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXXII**
**(ACE Health Center, Ltd. – The PNC Financial Services Group, Inc. - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to “Ace Health Center, Ltd.” at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71.     On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74.     On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Ace Health Center, Ltd.

75.     On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.      negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

    b.      failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.      failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.      failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

    e.      failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.      failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.      intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Ace Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fee and costs.

**Count LXXIII**
**(Center for Family Health Care, SC – The PNC Financial Services Group, Inc. - Violation of Section 3-420 of Uniform Commercial Code)**

1. -Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Center for Family Health Care, SC held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Center for Family Health Care, SC

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Center for Family Health Care, SC was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff's staff at the plaintiff's offices and/or (2) when Irina Nakhshin, an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Center for Family Health Care, SC", Devon Bank converted the plaintiff's funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Center for Family Health Care, SC" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Center for Family Health Care, SC" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXXIV**
**(Center for Family Health Care, SC – The PNC Financial Services Group, Inc. - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Center for Family Health Care, SC" at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Center for Family Health Care, SC

75. On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.     negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

    b.     failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.     failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.     failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

    e.     failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.     failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.     intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Center for Family Health Care, SC suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**Count LXXV**
**(Vijay L. Goyal, MD- The PNC Financial Services Group, Inc. - Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument" , 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, VIJAY L. GOYAL, MD held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to VIJAY L. GOYAL, MD

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, VIJAY L. GOYAL, MD was the payee of the checks stolen by Irina Nakhshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin , an agent of the plaintiffs, took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "VIJAY L. GOYAL, MD", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to ‘‘VIJAY L. GOYAL, MD” in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee “VIJAY L. GOYAL, MD” but indorsed as “Affiliated Health Group Billing, Inc.” or “American Health Center for Billing Inc.”

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXXVI**
**(Vijay L. Goyal, MD – The PNC Financial Services Group, Inc. - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to “Ace Health Center, Ltd.” at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff's funds into her personal account.

73. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Ace Health Center, Ltd.

75. On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

    a.    negotiated and/or deposited checks made payable to plaintiff without proper endorsement ; or

    b.    failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

    c.    failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

    d.    failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

    e.    failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

    f.    failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

    g.    intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, the Ace Health Center, Ltd. suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fee and costs.

**Count LXXVII**
**(Vinod K. Goyal, MD – The PNC Financial Services Group, Inc. - Violation of Section 3-420 of Uniform Commercial Code)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the State of Illinois has adopted Section 3-420 of the Uniform Commercial Code entitled "Conversion of Instrument", 810 ILCS 5/3-420.

68. On and after 1992, the payment of a check over an unauthorized endorsement and the payment of a check missing a necessary endorsement constitute conversion pursuant to Section 3-420.

69. On and after 1992, a "payee" who has taken delivery of a check can maintain a cause of action for conversion.

70. On and after 1992, plaintiff, Vinod K. Goyal, MD held an interest in and held a right to possess all checks sent to the plaintiffs by the insurance companies and made payable to Vinod K. Goyal, MD

71. On and after 1992, Irina Nakhshin, without authority from plaintiff, placed a false fraudulent and/or improper endorsement on the aforesaid checks.

72. On and after 1992, plaintiff, Vinod K. Goyal, MD was the payee of the checks stolen by Irina Nak.hshin and deposited into Devon Bank.

73. On and after 1992, Irina Nakhshin was an agent of the plaintiff and thus the plaintiff received delivery of the checks when (1) the checks were received by plaintiff s staff at the plaintiff s offices and/or (2) when Irina Nakhshin , an agent of the plaintiffs , took possession of the checks.

74. On and after 1992, on each occasion that Devon Bank deposited the checks made payable to "Vinod K. Goyal, MD", Devon Bank converted the plaintiff s funds.

75. On and after 1992, Devon Bank converted numerous checks made payable to "Vinod K. Goyal, MD" in the sum of millions of dollars upon deposit in violation of Section 3-420.

76. On and after 1992, Devon Bank did not have good title to the aforesaid checks.

77. On and after 1992, The PNC Financial Services Group, Inc. as the health insurance company drawer bank failed to reasonably inspect the front named entity payee against the back differing stamped named entity endorser of the forged checks forwarded by Devon Bank and TCF Bank.

78. On and after 1992, The PNC Financial Services Group, Inc. did not adhere to reasonable commercial banking standards and did not act in good faith by intentionally depositing checks which were made to a particular payee "Vinod K. Goyal, MD" but indorsed as "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc."

79. On and after 1992, The PNC Financial Services Group, Inc. owed a duty and responsibility not to negotiate checks indorsed by any entity that was not the payee.

Wherefore, plaintiff seeks damages for each and every violation of Section 3-420 of the Uniform Commercial Code.

**Count LXXVIII**
**(Vinod K. Goyal, MD- The PNC Financial Services Group, Inc. - Negligence and Violation of Reasonable Commercial Banking Standards)**

1. Plaintiff hereby incorporates paragraphs 1-66 in Facts Common to All Counts.

67. On and after 1992, the commercial banking standards required that checks validly deposited into an account be indorsed and indorsed with an authorized signature of the payee.

68. On and after 1992, Irina Nakhshin deposited numerous checks payable to "Vinod K. Goyal, MD" at Devon Bank, none of which were properly indorsed.

69. At no time did Irina Nakhshin have the authority to indorse any of the aforementioned checks.

70. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care not to deposit or negotiate checks payable to the plaintiffs which were not properly indorsed.

71. On and after 1992, reasonable commercial banking standards required that banks implement fraud detection procedures and computer software in order to identify fraud occurring in the client's accounting.

72. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to identify, *inter alia*, that Irina Nakhshin was depositing the plaintiff s funds into her personal account.

73. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to identify and investigate the thousands of "red flags" were present in the accounts held and/or controlled by Irina Nakhshin.

74. On and after 1992, The PNC Financial Services Group, Inc. owed a duty of care to the plaintiffs to not deposit and/or negotiate the aforesaid checks made payable to Vinod K. Goyal, MD.

75. On and after 1992, The PNC Financial Services Group, Inc. was negligent and breached its duty of care owed to plaintiff in one or more of the following respects:

a. negotiated and/or deposited checks made payable to plaintiff without proper endorsement; or

b. failed to obtain proper documentation or proof regarding the authority of Irina Nakhshin to deposit checks in the name of the plaintiff; or

c. failed to implement proper policies and procedures which would identify "red flags" in the accounts opened by Irina Nakhshin; or

d. failed to investigate and/or report on "red flags" known to The PNC Financial Services Group, Inc. concerning transactions in the accounts opened by Irina Nakhshin; or

e. failed to "know the client" concerning the accounts opened by Irina Nakhshin; or

f. failed to instruct and train its tellers and banking staff regarding the requirements of a proper authorization of a corporate payee prior to negotiating an instrument with the corporation's name; or

g. intentionally and in bad faith deposited checks made payable to the plaintiff for years which were indorsed by an individual without authority.

76. As a direct and/or result of one or more of the aforesaid negligent acts, Vinod K. Goyal, MD suffered economic loss including, but not limited to, the amount of each check charged to the "Affiliated Health Group Billing, Inc." or "American Health Center for Billing Inc." accounts.

Wherefore, plaintiff seeks damages in excess of $20 million dollars for the loss of funds, pre-judgment interest and attorneys' fees and costs.

**WHEREFORE**, plaintiffs demand judgment against defendants, in an amount sufficient to compensate them for their losses and damages, together with pre-judgment interest and attorneys' fees and costs.

**JURY DEMAND**

Plaintiffs respectfully request a trial by jury.

Dated: July 8, 2015

Respectfully submitted,

**AFFILIATED HEALTH GROUP, LTD., et al.**

*/s/ Jaime Zeas*
One of Their Attorneys

Law Offices of Jaime Zeas, Esq.
7608 Geranium Street
Bethesda, Maryland 20817
Tel: (815) 529-0098
Fax: (815) 526-7298
j-zeas@nlaw.northwestern.edu
IL Bar # 6288733