**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AFFILIATED HEALTH GROUP, LTD., | ) | |
| AMERICAN HEALTH CENTER, LTD., | ) | |
| DIMENSIONS MEDICAL CENTER, LTD., | ) | |
| ACCESS HEALTH CENTER, LTD., | ) | |
| ACU HEALTH CENTER, LTD., | ) | |
| ADVANTAGE HEALTH CARE, LTD., | ) | |
| AANCHOR HEALTH CENTER, LTD., | ) | |
| FORESTVIEW MEDICAL CENTER, LTD., | ) | |
| MICHIGAN AVENUE CENTER FOR | ) | Case No. 15 C 6016 |
| HEALTH, LTD., ACE HEALTH CENTER | ) | |
| LTD., CENTER FOR FAMILY HEALTH | ) | Judge Joan H. Lefkow |
| CARE, SC, VIJAY L. GOYAL, MD and | ) | |
| VINOD K. GOYAL, MD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CITIBANK, N.A., BANK OF AMERICA., | ) | |
| N.A., and PNC BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiffs filed this case against Citibank, N.A. (Citi), Bank of America, N.A. (BOA), and

PNC Bank, N.A. (PNC) (collectively defendant drawee banks) alleging a total of ninety-one

counts of (1) check conversion under Article 3-420 of the Uniform Commercial Code (codified

in Illinois at 810 Ill. Comp. Stat. 5/3-420);[1] (2) Illinois common law negligence, and (3) Illinois

common law breach of fiduciary duty.  (Dkt. 24, Second Amended Compl. (Sec. Am. Compl.).)

For the reasons stated below, defendants' joint motion to dismiss (dkt. 27) is granted.[2]

---

[1] Because the Illinois courts rely on the accompanying comments in the UCC in interpreting its commercial code, this opinion references the UCC rather than Illinois Consolidated Statutes.  All section references are to the UCC unless otherwise indicated.

[2] The court has jurisdiction under 28 U.S.C. § 1332(a)(1) because (1) plaintiffs are either incorporated in or citizens of Illinois and no defendant banking association is incorporated in, a citizen or

# BACKGROUND[3]

Plaintiffs Vijay L. Goyal and Vinod K. Goyal own and operate eleven for-profit healthcare providers, which are all plaintiffs in this case.[4]  (Sec. Am. Compl. ¶¶ 1–2.)  Irina Nakhshin, the bookkeeper for all the plaintiffs, was responsible for posting and documenting the medical insurance payments plaintiffs received.  During her employment, Nakhshin created four illegitimate companies with names similar to those of plaintiffs[5] and opened bank accounts for the illegitimate companies at Devon Bank and TCF Bank (the depositary banks).[6]  (*Id.* ¶¶ 8, 10, 12.)  Plaintiffs assert that the embezzlement caused a loss to them of between $14 and $16 million.  (Nakhshin was indicted in this district and pleaded guilty on March 9, 2016.  *United States* v. *Nakhshin*, Case No. 15 CR 516 (N.D. Ill.)).

---

has its principal place of business in Illinois for diversity purposes, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Dkt. 24 at 1–7.)  Citi is a licensed national banking association with articles of association designating the State of South Dakota, wherein its main office and principal place of business are located, as its residence and its citizenship.  (*Id.* at 4.)  BOA and PNC are licensed national banking associations with articles of association each designating the State of North Carolina, wherein its main office and principal place of business are located, as its residence and its citizenship.  (*Id.* at 5–6.)

Venue is proper in this district under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

[3] Unless otherwise noted, the following facts are taken from the second amended complaint and are presumed true for the purpose of resolving the pending motion.  *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citation omitted).

[4] The plaintiff companies are Affiliated Health Group, Ltd., American Health Center, Ltd., Dimensions Medical Center, Ltd., Access Health Center, Ltd., ACU Health Care, Ltd., Aanchor Health Center, Ltd., Forestview Medical Center, Ltd., Michigan Avenue Center for Health, Ltd., Ace Health Center, Ltd., Center for Family Health Care, SC, and Advantage Health Care, Ltd. (collectively, plaintiffs).

[5] The illegitimate companies' names were Affiliated Health Group *Billing*, Inc., American Health Center *for Billing*, Inc., Dimensions Medical *Management* Corp., and American Center *for Management*, Inc.  (Sec. Am. Compl. ¶ 8.)

[6] The depositary banks were not sued in this case because plaintiffs sued them in *Affiliated Health Group, Ltd., et. al.,* v. *Devon Bank*, et. al., No. 13 L 011485 (Cir. Ct. Cook Cty.).  According to defendants, the claims were dismissed against all but Devon Bank, which ultimately settled with plaintiffs.  Defendants accuse plaintiffs of seeking double recovery in this case.

From 1992 to 2013, Nakhshin stole from plaintiffs' mail hundreds of checks issued by numerous insurers payable to the Goyals' legitimate companies, indorsed them, and deposited them into the illegitimate accounts she created at the depositary banks. (*Id.* ¶¶ 11–12.) After accepting the checks for deposit, the depositary banks in the normal course of business presented the checks to the defendant drawee banks for payment. (*Id.* ¶ 16.) The defendant drawee banks then "accepted and negotiated the checks, forwarding or crediting millions of dollars to the illegitimate accounts of Irina Nakhshin and her affiliates held at Devon Bank and TCF Bank." (*Id.* ¶ 18.)

Plaintiffs identify seventy checks allegedly paid by BOA from 1992 to 2013 (dkt. 25) and forty checks allegedly paid by Citi from 1992 to 2013 (dkt. 26), as misdirected by Nakhshin. None of the checks identifies PNC as the drawee bank.[7] Each count pertains to a particular check and each count asserts the same three claims against one or another of the defendants. As such, the claims will be address without regard to which specific defendant is sued unless there is a reason to differentiate.

The second amended complaint asserts three types of claims: that payment by the defendants of the fraudulently indorsed checks to entities that were not the payee constituted (1) conversion under § 3-420, (2) negligence, and (3) breach of fiduciary duty, in that the banks violated reasonable commercial banking standards by failing to inspect the indorsements, by failing to properly train their employees to inspect indorsements, and by failing to develop appropriate fraud-detection tools to detect the massive fraud.

---

[7] Although there are no checks listed that identify PNC as a drawee bank, sufficient facts in the second amended complaint are alleged that indicate PNC was a drawee bank involved in the alleged wrongful acts.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief;' they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) (citation omitted).

**ANALYSIS**

Defendants jointly contend that none of the counts allege facts that would permit the inference that Illinois statutory or common law has been violated.

**I.     UCC Claims**

Defendants seek dismissal of plaintiffs' conversion claims under the UCC because (1) the claims are subject to a three-year statute of limitations, § 3-118(g), which cannot be extended by

the discovery rule,[8] and (2) the conversion claims for checks paid within the limitations period are barred by the "responsible employee rule" set forth in § 3-405. Plaintiffs respond that two clear and unequivocal exceptions to statute of limitations period for check conversion apply and that a blanket application of the statute of limitations for conversion, without taking into account the totality of the circumstances of this matter, inevitably leads to an unconscionable result. Defendants reply that, regardless of the statute of limitations, conversion claims for checks endorsed and deposited by the plaintiffs' embezzling employee are barred by the "responsible employee rule." Since the responsible employee rule can be dispositive of the UCC arguments, the court begins its analysis there.

Section 3-405 sets out a comparative fault framework to allocate rights and liabilities of a person who, in good faith, pays a fraudulently indorsed instrument. Where a dishonest employee entrusted with responsibility over her employer's checks makes a fraudulent indorsement in a name substantially similar to the name of the payee, the loss falls on the employer. *See* § 3-405(b), (c), and cmt. 1. If, however, the person paying the instrument fails to exercise ordinary care and the failure substantially contributes to the resulting loss from the fraud, the negligent person is responsible to the extent their negligence contributed to the loss. *Id.* The purpose of the "responsible employee rule" is to shift the risk of loss from the bank to the employer, who is in a better position to monitor their employees. *Id.*

The UCC's official comment 3, example case #3, is parallel to the facts presented here:

> The duties of Employee, *a bookkeeper*, include posting the
> amounts of checks payable to Employer to the accounts of the

---

[8] *See Rodrigue* v. *Olin Employees Credit Union*, 406 F.3d 434, 444 (7th Cir. 2005) (citing *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 678 N.E.2d 322, 326, 286 Ill. App. 3d 1069, 222 Ill. Dec. 710 (1997); *see also Kidney Cancer Ass'n* v. *N. Shore Cmty. Bank & Trust Co.*, 869 N.E.2d 186, 195, 373 Ill. App. 3d 396, 311 Ill. Dec. 512 (2007).

> drawers of the checks. *Employee steals a check payable to Employer which was entrusted to Employee and forges Employer's indorsement.* The check is deposited by Employee to an account in Depositary Bank which Employee opened in the same name as Employer, and the check is honored by the drawee bank.

In such an instance,

> [t]he indorsement is effective as Employer's indorsement because Employee's duties include processing checks for bookkeeping purposes. Thus, Employee is entrusted with "responsibility" with respect to the check. *Neither Depositary Bank nor the drawee bank is liable to Employer for conversion of the check.* The same result follows if Employee deposited the check in the account in Depositary Bank without indorsement. Section 4-205(a). *Under subsection (c) deposit in a depositary bank in an account in a name substantially similar to that of Employer is the equivalent of an indorsement in the name of Employer.*

*Id.* at § 3-405(b), cmt. 3 (emphasis added). Naakshin, whose duties included posting and documenting medical insurance payments received by plaintiffs, stole checks payable to her employer (plaintiffs) and deposited them into bank accounts she created for illegitimate companies with names similar to plaintiffs' names. It is clear under § 3-405(b) that the drawee banks are not liable to the employer (plaintiffs) for conversion of the check.

Next, the comparative fault framework articulated in the last sentence in section 3-405(b) appears to have been directed to the failure of the *depositary bank* to exercise ordinary care. The UCC's official comment 4, in referring to the last sentence in subsection (b), states

> the *depository bank* may have failed to exercise ordinary care when it allowed the employee to open an account in the [employer's name], to deposit checks payable to [the employer] in that amount, or to withdraw funds from the account that were proceeds of checks payable to [the employer]. Failure to exercise ordinary care is to be determined in the context of all the facts relating to the bank's conduct with respect to the bank's *collection of the check.*

§ 3-405(b), cmt. 4 (emphasis added). At least, plaintiffs have cited no authority indicating that the law places a duty on a drawee bank to review payee indorsements on checks received from a

depositary bank.  *See* Barkley Clark & Barbara Clark, LAW OF BANK DEPOSITS, COLLECTIONS, & CREDIT CARDS, Vol. 2, § 10.06[3] (2015) ("Standard thinking is that the drawee bank is responsible for the validity of the drawer's signature while the bank of first deposit is responsible for indorsements on the check."); *Guardian Life Ins. Co.* v. *Weisman*, 223 F.3d 229, 233 (3rd Cir. 2000) ("We think it is reasonable that what review there is of payee indorsements should take place at the depositary bank, which is most likely to have the information available to verify a depositor's indorsement.").

Accordingly, § 3-405(b) cannot be used to overcome the defendant drawee banks' responsible employee rule defense.  Since the responsible employee rule is dispositive of the conversion claims, and the application of the statute of limitations would not change the outcome, the court need not reach the limitations issue.  Plaintiffs' conversion claims against all defendants are, therefore, dismissed with prejudice.

## II.     Common Law Negligence

Plaintiffs do not clearly articulate what their negligence theory is, whether breach of a duty to inspect the indorsements or, possibly, breach of a duty to implement fraud-detection procedures such as computer software to identify fraud occurring in the client's accounting records.  Defendants move to dismiss these claims because (1) plaintiffs' negligence claims are displaced by the UCC and barred by Illinois' economic loss rule, and (2) as drawee banks, defendants did not owe plaintiffs a duty of care.  (Dkt. 28 at 10–12.)

To the extent that plaintiffs contend that Illinois law imposed a duty on the defendants to implement fraud detection procedures, they cite no common law or statutory authority for it, so the argument is disregarded.  As to the duty to inspect indorsements, both of the defenses are sound.  Plaintiffs are not free to avoid a result governed by the UCC by characterizing it as a

negligence claim.  *See Travelers Cas. & Sur. Co. of Am., Inc.* v. *Nw. Mut. Life Ins. Co*., 480 F.3d 499, 505 (7th Cir. 2007) (Where a UCC section "fits the facts of the case to a T, no room is left for recharacterization intended to circumvent the statute of limitations applicable to such claims.").  Common law supplements the UCC only if it is not displaced by a particular provision in the UCC. § 1-103(b).  The UCC governs the relationship between a bank and its *customer.  Napleton* v. *Great Lakes Bank, N.A.*, 945 N.E.2d 111, 114, 408 Ill. App. 3d 448, 348 Ill. Dec. 804 (2011).  The duty of a payor bank to a *non-customer* depositor of a check is derived solely from §§ 4-301 and -302. *See Greenberg, Trager & Herbst,  LLP* v. *HSBC Bank USA*, 958 N.E.2d 77, 83, 17 N.Y.3d 565, 577, 934 N.Y.S.2d 43, 49 (2011).

Plaintiffs contend that they were and still are customers of BOA (dkt. 30-1 at 6) and of Citi (dkt. 24 at 20) because they had accounts there, a relationship that imposed a duty of ordinary care on the defendants as drawee banks not addressed by the UCC.  The duty to inspect indorsements, however, is explicitly addressed by the UCC.  Payor banks have duties to their *customers* to issue statements of account that show payment of items for the account such that the customer may examine the statements and promptly notify the payor bank of unauthorized payments.  § 4-406.  (As customers, it is likely that plaintiffs received statements that would have revealed to the Goyals that expected payments had not been deposited in their legitimate accounts).  Since the defendant banks were paying the insurance companies' items, the customers in the transactions at issue were not the plaintiffs but the insurance companies on whose accounts the checks were drawn.  Those payments had nothing to do with any accounts plaintiffs may have coincidently maintained with the defendants, and therefore defendant banks did not owe plaintiffs any duty to them as customers.

Plaintiffs rely on *Continental Cas. Co. Inc.* v. *Am. Nat'l Bank*, 768 N.E.2d 352, 358–60 and 362, 329 Ill. App. 3d 686, 263 Ill. Dec. 592 (2003), and *Mut. Servs.* v. *Elizabeth State Bank*, 265 F.3d 601, 614 (7th Cir. 2001), to support their position that the common law is not displaced in the circumstances presented here.  In *Elizabeth State Bank*, the court held that, where a bank was presented with a corporate check payable to the bank, the bank had a common law duty to ensure that the proceeds of the check were not misapplied.  *Elizabeth State Bank*, 265 F.3d at 614.  It reasoned that, because the scheme perpetrated was a common one but was not addressed in the UCC and because the common law rule had been consistently applied both before and after the adoption of the UCC, the UCC did not displace the common law.  *Id.* at 614–15.  In *Continental Casualty Co.*, under similar facts, the court applied the same common law rule and specifically pointed out that, because the defendant bank was "the bank of first deposit rather than the payor bank" and because the alleged breach of contract claim related to the failure to verify the named payee rather than the drawer signatures, the UCC's "automated processing defense" of § 3-103(a)(7) did not apply.  *Continental Cas. Co.*, 768 N.E.2d at 360,

The situation here is wholly unlike that in either case because, sufficiently here, the defendants were not depositary banks.  As set out above, the UCC places on the depositary bank a duty of ordinary care in accepting indorsements.  By clear implication, drawee banks do not have that duty.  The facts here do not fall into a gap in the UCC that needs to be filled by the common law.[9]

---

[9] In their response, plaintiffs contend that there is a special agency relationship between a drawee bank and a payee due to the check negotiation process.  (Dkt. 30-1 at 6 (citing to *People of the State of Illinois ex rel.* v. *Peoples Bank and Trust Company of Rockford, Illinois*, 268 Ill. App. 39 (2d Dist. 1932).)  Defendants reply that this pre-UCC case has nothing to do with the drawee banks' liability.  (Dkt. 39 at 12.)  The court agrees with defendants.  Article 4 of the UCC long ago displaced the common law governing negotiable instruments.

Moreover, the long-standing "*Moorman* doctrine" bars an aggrieved party from recovering under a negligence theory for solely economic loss. *See Moorman Mfg. Co.* v. *National Tank Co.*, 435 N.E.2d 443, 452, 91 Ill. 2d 69, 61 Ill. Dec. 746 (1982) ("[T]he UCC provides the proper framework for a purchaser's recovery of economic losses. Allowing an aggrieved party to recover under a negligence theory for solely economic loss would constitute an unwarranted infringement upon the scheme provided by the UCC.").

For these reasons, plaintiffs' negligence claims must fail.

## III. Breach of Fiduciary Duty

Plaintiffs bring numerous breach of fiduciary duty claims against Citi,[10] alleging that Citi "breached its fiduciary obligation to plaintiffs by making payment on the check notes presented for payment by the depositor banks of Irina Nakshin and her various accomplices." (Sec. Am. Compl. at 20.) Defendants argue that "it is well established in Illinois, and virtually everywhere, that '[a] fiduciary relationship does not exist as a matter of law between a bank and its depositors. The relationship is simply that of a debtor-creditor.'" (Dkts. 28 at 14, 39 at 14 (citing *Johnson* v. *Edwardsville Nat'l Bank & Trust Co.*, 594 N.E.2d 342, 345, 229 Ill. App. 3d 835, 171 Ill. Dec. 490 (App. Ct. 1992)).) "Reviewing courts have declined to find a fiduciary duty absent facts showing that the depositor was subject to domination and influence on the part of the bank." *Rodriguez* v. *Marrero*, No. 2–11–1033, 2013 WL 152306, at *5 (Ill. App. Ct. Jan. 8, 2013) (citing Johnson, 594 N.E.2d at 345). Here, plaintiffs have completely failed to respond to these arguments for dismissal and apparently accede in the motion with regard to this claim. *See Bonte* v. *U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument waives any challenge to it); *Kirksey* v. *R.J. Reynolds Tobacco Co.*, 168 F.3d 1039,

---

[10] *See* counts III, VI, IX, XII, XV, XVIII, XXI, XIV, XXVII, XXX, XXXIII, XXXVI, and XXXIX.

1042 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *see also Cty. of McHenry* v. *Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action." (internal quotations omitted).)

## **CONCLUSION**

For the foregoing reasons, defendant drawee banks' motion to dismiss (dkt. 27) is granted with prejudice.

Date:  April 27, 2016

_____
U.S. District Judge Joan H. Lefkow